UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HERMAN D. COLLINS, ) | |
| ) | No. CV-10-00004-CI |
| Plaintiff, ) | |
| ) | ORDER DENYING PLAINTIFF'S |
| v. ) | MOTION FOR SUMMARY JUDGMENT |
| ) | AND GRANTING DEFENDANT'S |
| MICHAEL J. ASTRUE, Commissioner ) | MOTION FOR SUMMARY JUDGMENT |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 13, 19.) Attorney Maureen J. Rosette represents Herman Collins (Plaintiff); Special Assistant United States Attorney Franco L. Becia represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment, and directs entry of judgment for Defendant.

**JURISDICTION**

Plaintiff protectively filed for disability insurance benefits (DIB) and Supplemental Security Income (SSI) on January 26, 2007. (Tr. 121.)  He alleged disability due to depression, Type II diabetes, arthritis, bursitis, neuropathy, heart issues, gout, stomach problems, and high blood pressure.  (Tr. 125.)  He alleged

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

1 an onset date of January 7, 2007.  (*Id*.)  Benefits were denied

2 initially and on reconsideration.  Plaintiff timely requested a

3 hearing before an administrative law judge (ALJ), which was held

4 before ALJ R. S. Chester on October 22, 2008.  (Tr. 23-57.)

5 Plaintiff, who was represented by counsel, and vocational expert K.

6 Diane Kramer (VE) testified.  The ALJ denied benefits on November

7 28, 2008, and the Appeals Council denied review.  (Tr. 1-5, 12-22.)

8 The instant matter is before this court pursuant to 42 U.S.C. §

9 405(g).

10 **STANDARD OF REVIEW**

11      In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

12 court set out the standard of review:

13          A district court's order upholding the Commissioner's
    denial of benefits is reviewed *de novo*. *Harman v. Apfel*,
14      211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the
    Commissioner may be reversed only if it is not supported
15      by substantial evidence or if it is based on legal error.
    *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
16      Substantial evidence is defined as being more than a mere
    scintilla, but less than a preponderance.  *Id*. at 1098.
17      Put another way, substantial evidence is such relevant
    evidence as a reasonable mind might accept as adequate to
18      support a conclusion.  *Richardson v. Perales*, 402 U.S.
    389, 401 (1971).  If the evidence is susceptible to more
19      than one rational interpretation, the court may not
    substitute its judgment for that of the Commissioner.
20      *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of
    Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

21

22          The ALJ is responsible for determining credibility,
    resolving conflicts in medical testimony, and resolving
    ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
23      Cir. 1995).  The ALJ's determinations of law are reviewed
    *de novo*, although deference is owed to a reasonable
24      construction of the applicable statutes.  *McNatt v. Apfel*,
    201 F.3d 1084, 1087 (9th Cir. 2000).

25

26      It is the role of the trier of fact, not this court, to resolve

27 conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

1  supports more than one rational interpretation, the court may not

2  substitute its judgment for that of the Commissioner.  *Tackett*, 180

3  F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

4  Nevertheless, a decision supported by substantial evidence will

5  still be set aside if the proper legal standards were not applied in

6  weighing the evidence and making the decision.  *Brawner v. Secretary*

7  *of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If

8  there  is  substantial  evidence  to  support  the  administrative

9  findings, or if there is conflicting evidence that will support a

10  finding of either disability or non-disability, the finding of the

11  Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-

12  1230 (9th Cir. 1987).

### SEQUENTIAL EVALUATION

14      Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the

15  requirements necessary to establish disability:

16         Under the Social Security Act, individuals who are
        "under a disability" are eligible to receive benefits.  42

17      U.S.C. § 423(a)(1)(D).  A "disability" is defined as "any
        medically  determinable  physical  or  mental  impairment"

18      which  prevents  one  from  engaging  "in  any  substantial
        gainful activity" and is expected to result in death or

19      last "for a continuous period of not less than 12 months."
        42 U.S.C. § 423(d)(1)(A).  Such an impairment must result

20      from  "anatomical,  physiological,  or  psychological
        abnormalities  which  are  demonstrable  by  medically

21      acceptable clinical and laboratory diagnostic techniques."
        42 U.S.C. § 423(d)(3).   The Act also provides that a

22      claimant  will  be  eligible  for  benefits  only  if  his
        impairments "are of such severity that he is not only

23      unable to do his previous work but cannot, considering his
        age, education and work experience, engage in any other

24      kind  of  substantial  gainful  work  which  exists  in  the
        national economy. . . ."  42 U.S.C. § 423(d)(2)(A).  Thus,

25      the definition of disability consists of both medical and
        vocational components.

26
         In  evaluating  whether  a  claimant  suffers  from  a

27      disability,  an  ALJ  must  apply  a  five-step  sequential
        inquiry  addressing  both  components  of  the  definition,

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1   until a question is answered affirmatively or negatively
2   in such a way that an ultimate determination can be made.
    20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).   "The
3   claimant bears the burden of proving that [s]he is
    disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.
4   1999).   This requires the presentation of "complete and
    detailed objective medical reports of h[is] condition from
5   licensed medical professionals." *Id*. (citing 20 C.F.R. §§
    404.1512(a)-(b), 404.1513(d)).

6        The Commissioner has established a five-step sequential

7   evaluation process for determining whether a person is disabled.  20

8   C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S.

9   137, 140-42 (1987).   In steps one through four, the burden of proof

10  rests upon the claimant to establish a prima facie case of

11  entitlement to disability benefits.   *Rhinehart v. Finch*, 438 F.2d

12  920, 921 (9th Cir. 1971).   This burden is met once a claimant

13  establishes that a physical or mental impairment prevents him from

14  engaging in his previous occupation.   20 C.F.R. §§ 404.1520(a),

15  416.920(a).   If a claimant cannot do his past relevant work, the ALJ

16  proceeds to step five, and the burden shifts to the Commissioner to

17  show that (1) the claimant can make an adjustment to other work; and

18  (2) specific jobs exist in the national economy which claimant can

19  perform.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v.*

20  *Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

21                    **STATEMENT OF THE CASE**

22       The facts of the case are set forth in detail in the transcript

23  of proceedings and are briefly summarized here.  At the time of the

24  hearing, Plaintiff was 55 years old, married, and living in a mobile

25  home with his spouse and father-in-law.  (Tr. 31.)   Plaintiff had a

26  high school education and one and a half years of community college.

27  (Tr. 33.)   He had served in the Navy, but was released on an

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1   administrative discharge.  (Tr. 35.)  Plaintiff had past work

2   experience in the automobile sales business as a car salesman and

3   car lot porter.  He stated he had had more than fifty jobs in auto

4   sales.  (Tr. 47, 52.)  He testified he stopped working because he

5   had to elevate his feet six times a day, he suffered sore joints in

6   his knees, shoulders, back and hips, and was impaired by depression

7   and mood swings.  (Tr. 36, 45-46.)  He also stated he was

8   hospitalized at the Veteran's Administration for depression in

9   January 2007.  (Tr. 49.)  He testified his medication side effects

10  made it difficult to work.  (Tr. 35-36.)  Regarding work related

11  activities, Plaintiff reported his depression prevented him from

12  being in public, he only could walk for ten minutes, stand for ten

13  to fifteen minutes, sit for ten to fifteen minutes, and carry no

14  more than two twelve packs of pop reportedly due to his physical

15  impairments.  (Tr. 41-44.)

16                        **ADMINISTRATIVE DECISION**

17      At step one, ALJ Chester found Plaintiff had not engaged in

18  substantial gainful activity since January 7, 2007.  (Tr. 14.)  At

19  step two, he found Plaintiff had severe impairments of "major

20  depressive disorder; bursitis; degenerative disc disease, lumbar

21  spine; morbid obesity; and chronic obstructive pulmonary disease

22  (COPD)."  (*Id*.)  He found reported left knee problems were not

23  severe.  (Tr. 16.)  At step three, ALJ Chester found Plaintiff's

24  impairments, alone and in combination, did not meet or medically

25  equal one of the listed impairments in 20 C.F.R., Appendix 1,

26  Subpart P, Regulations No. 4 (Listings).  (Tr. 17.)  At step four,

27  the ALJ determined Plaintiff had the residual functional capacity

28

1  (RFC) to perform medium work with these specific limitations:

2      -lift and carry up to 20 pounds frequently and up to 50 pounds

3  occasionally;

4      -sit for two hours at one time up to a total of four hours in

5  an 8-hour day;

6      -stand and walk for two hours at one time up to a total of 4

7  hours in an 8 hour day;

8      -avoid overhead reaching, climbing ladders or scaffolds,

9  crouching, and working around unprotected heights and moving

10 mechanical parts.

11     -occasional climbing stairs and ramps, balancing, stooping,

12 kneeling, crawling, and operating a motor vehicle.  (Tr. 18.)

13     In his step four findings, ALJ Chester summarized the medical

14 evidence, third party testimony, and Plaintiff's testimony, made

15 credibility findings, and concluded Plaintiff's statements regarding

16 the severity of his functional limitations were not credible to the

17 extent they were inconsistent with the RFC findings. (Tr. 18-21.)

18 Based on the RFC, Plaintiff's credible testimony, and VE testimony,

19 the ALJ concluded Plaintiff could perform his past work as a

20 automobile salesman and used car lot porter. (Tr. 21-22.)  The ALJ

21 found Plaintiff was not disabled, as defined by the Social Security

22 Act, from the alleged onset date through the date of his decision.

23 (Tr. 22.)

24                            **ISSUES**

25     The question is whether the ALJ's decision is supported by

26 substantial evidence and free of legal error.  Plaintiff argues the

27 ALJ erred in his: (1) credibility findings; (2) evaluation of

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

1 medical source opinions; and (3) step four determination. (Ct. Rec.

2 14 at 9-18.)

3                              **DISCUSSION**

4 **A.   Credibility Findings**

5        Plaintiff contends the ALJ failed to properly discredit his

6 symptom testimony.   (Ct. Rec. 14 at 14.)   When the ALJ finds a

7 claimant's statements as to the severity of impairments, pain, and

8 functional limitations are not credible, the ALJ must make a

9 credibility determination with findings sufficiently specific to

10 permit the court to conclude the ALJ did not arbitrarily discredit

11 claimant's allegations.   *Thomas v. Barnhart*, 278 F.3d 947, 958-959

12 (9th Cir. 2002)*; Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir.

13 1991) (en banc).

14        If there is no affirmative evidence that the claimant is

15 malingering, the ALJ must provide "clear and convincing" reasons for

16 rejecting the claimant's symptom testimony.   *Reddick v. Chater*, 157

17 F.3d 715, 722 (9th Cir. 1998).   The ALJ engages in a two-step

18 analysis in deciding whether to admit a claimant's subjective

19 symptom testimony.   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36

20 (9th Cir. 2007)*; Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

21 Under the first step, the ALJ must find the claimant has produced

22 objective medical evidence of an underlying "impairment," and that

23 the impairment, or combination of impairments, could reasonably be

24 expected to cause "some degree of the symptom."   *Lingenfelter*, 504

25 F.3d at 1036.

26        Once the first test is met, the ALJ then evaluates the

27 credibility of the claimant and makes specific findings supported by

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

1    "clear and convincing" reasons.  (*Id.*)  In addition to ordinary

2    techniques of credibility evaluation, the ALJ may consider the

3    following factors when weighing the claimant's credibility: the

4    claimant's reputation for truthfulness; inconsistencies either in

5    his allegations of limitations or between his statements and

6    conduct; daily activities and work record; and testimony from

7    physicians and third parties concerning the nature, severity, and

8    effect of the alleged symptoms.  *Light v. Social Sec. Admin.*, 119

9    F.3d 789, 792 (9th Cir. 1997); *Fair v. Bowen*, 885 F.2d 597 n.5 (9th

10   Cir. 1989).  Although an adjudicator may not reject a claimant's

11   extreme symptom complaints solely on a lack of objective medical

12   evidence to support the degree of severity alleged, medical evidence

13   is a relevant factor to consider.  *Social Security Ruling* (*SSR*) 96-

14   7p.[1]

15       Plaintiff argues the ALJ failed to give "clear and cogent"

16   reasons for rejecting his statement that he needed to elevate his

17   legs six times a day.  (Ct. Rec. 14 at 15-16; Tr. 46.)  However, *de*

18   *novo* review of record and the ALJ's findings show that ALJ Chester

19   (1) specifically noted Plaintiff's testimony that he needs to

20   elevate his feet six times a day because they start to swell; and

21   (2) gave specific "clear and convincing" reasons supported by the

22

23       [1] Social Security Rulings are issued to clarify the Regulations

24   and policy.  They are not published in the federal register and do

25   not have the force of law.  However, under the case law, deference

26   is to be given to the Commissioner's interpretation of the

27   Regulations.  *Ukolov v. Barnhart*, 420 F.3d 1002 n.2 (9th Cir. 2005);

28   *Bunnell*, 947 F.2d at 346 n.3.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

record for discounting the intensity and limitations alleged in this testimony.  (Tr. 19, 20.)  For example, the ALJ found no medical evidence from treating sources at the Veteran's Administration medical clinic (VA) indicating concern regarding excessive swelling, restrictions on Plaintiff's activities due to swelling of his feet, or the need to elevate his legs.[2]  (Tr. 15, 19.)  These findings are supported by records from consulting neurologist, Kathleen Meyer, M.D., who examined Plaintiff on May 19, 2008, and Robert Rose, M.D., who examined Plaintiff on August 11, 2008.  (Tr. 15, 511-13, 514-25.)

Plaintiff presented to Dr. Meyer complaining of back pain, and reported swelling of his feet and ankles in his systems review form. (Tr. 511.)  On examination, Dr. Meyer noted normal sensation in all four extremities, normal strength and tone in his arms and legs with no atrophy, and no radicular component to his symptoms or examination.  (Tr. 512.)  She opined his condition did not warrant

---

[2] Independent review of the record indicates Plaintiff was diagnosed with gout in January 2006.  He was advised to change his diet, take his medication, and keep his feet elevated for 20 minutes if swelling became acute.  (Tr. 363.)  By June 2006, the medical records indicate Plaintiff had lost weight, his gout was controlled, and diabetes control was improving.  (Tr. 355.)  These records predate Plaintiff's alleged onset date of January 2, 2007.  Evidence that predates the alleged period of disability is of limited relevance. *Carmickle v. Astrue*, 533 F.3d 1155, 1165 (9th Cir. 2008). Treating source records after March 2007 do not reflect the severity noted in 2006.  (*See, e.g.*, Tr. 391-923.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

1 surgery, but recommended injections and aquatic therapy.  (*Id*.)

2       Plaintiff presented to Dr. Rose for an evaluation of back pain.

3 (Tr. 514.)  Dr. Rose found evidence of degenerative arthrosis in the

4 lumbosacral spine, without evidence of neuropathy or radiculopathy.

5 (Tr. 516.)   However, he noted "diffuse peripheral neuropathy

6 affecting bilateral feet." (Tr. 516.)  He concluded Plaintiff was

7 capable of standing for two hours at one time without interruption

8 for two hours in an eight-hour work day, walking for two hours at

9 one time without interruption for two hours in an eight-hour work

10 day, and sitting for four hours at one time without interruption,

11 for four hours in an eight-hour day.  (Tr. 520.)  Plaintiff was also

12 capable of frequently operating foot controls.  (Tr. 520, 521.)

13 Neither examining physician opined Plaintiff's condition required

14 elevation of his feet six times a day or suggested his foot

15 condition would prevent him from working.  This medical evidence

16 supports the ALJ's rejection of Plaintiff's allegation regarding the

17 need to elevate his feet six times a day. (Tr. 20; *see* Tr. 391-923.)

18       In addition, the ALJ referenced other evidence.  For example,

19 he noted inconsistencies between Plaintiff's testimony and

20 statements made to treatment providers.   As found by the ALJ,

21 Plaintiff reported to providers that he had left his job in auto

22 sales because of traffic tickets and stress, not because of alleged

23 impairment symptoms as testified.  (Tr.  20, 263, 289.)  The ALJ

24 also referenced reports from medical providers that contradicted

25 Plaintiff's complaints of intense pain and depression; the effective

26 control of anxiety and depression symptoms with medication; and

27 daily activities inconsistent with total disability.  (Tr. 19.)

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

1  These are "clear and convincing" reasons to discount Plaintiff's

2  testimony.  *Thomas*, 278 F.3d at 958-959.

3       As explained by the Commissioner in his policy ruling, the ALJ

4  need not totally reject a claimant's statements.  *SSR* 96-7p.   ALJ

5  Chester properly found Plaintiff's statements to be credible to a

6  certain degree, but discounted allegations of total disability based

7  on a review and interpretation of evidence in the record as a whole.

8  Tackett, 180 F.3d at 1097-98.  As stated by the ALJ, pain complaints

9  which are supported by the record were factored into the final RFC

10 determination.  (Tr. 20.)   The ALJ did not err in his credibility

11 findings.   Because  his  findings  are  supported  by  substantial

12 evidence, the Commissioner's credibility determination is affirmed.

13 **B.    Evaluation of Medical Evidence**

14      Plaintiff  argues  the  ALJ  did  not  give  legally  sufficient

15 reasons  for  rejecting  "marked"  limitation  findings  noted  by

16 examining psychologist, Dennis Pollack, Ph.D., in his Medical Source

17 Statement.   (Ct. Rec. 14 at 16; Tr. 565.)   Dr. Pollack evaluated

18 Plaintiff  on  October  10,  2008,  based  on  results  from  several

19 psychological  tests,  a  review  of  past  records,  and  an  interview

20 based on Plaintiff's self-report.  (Tr. 558-67.)

21      The ALJ summarized Dr. Pollack's evaluation and specifically

22 gave  little  weight  to  his  "report  and  opinion  of  [two]  marked

23 limitations  in  performing  activities  within  a  schedule,  maintain

24 regular attendance, be punctual within customary tolerances, [and]

25 complete a normal workday and workweek and perform at a consistent

26 pace without an unreasonable number and length of rest periods."

27 (Tr. 20, 565.)

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

1   In rejecting the "marked" ratings, the ALJ reasoned the

2 evaluation was obtained by Plaintiff's attorney as evidence for the

3 appeal, was based primarily on Plaintiff's unreliable self-report,

4 and was not supported by other evidence in the record.  (Tr. 16,

5 20.)  Although the purpose for which a medical opinion is sought is,

6 by itself, not a "specific, legitimate reason" for rejecting an

7 medical source opinion, it may be a permissible consideration in the

8 ALJ's analysis "under certain circumstances." *Nguyen v. Chater*, 100

9 F.3d 1462, 1464 (9th Cir. 1996) (*citing Burkhart v. Bowen*, 856 F.2d

10 1335, 1339 (9th Cir. 1988) (treating physician's letter solicited by

11 claimant's attorney legitimately rejected as unsupported by test

12 results, explanation, or other evidence in the record).

13   Here, ALJ specifically addressed his concerns regarding the

14 context in which the examination was conducted, but did not rely on

15 this reason for discounting the marked limitations assessed by Dr.

16 Pollack.  Rather, he referenced Plaintiff's lack of credibility and

17 lack of other medical evidence in the record to support the severity

18 rating.  (Tr. 20.)  These are legally sufficient reasons to reject

19 the contradicted functional limitations.[3]  *Tommasetti,* 533 F.3d at

20 1041; *see also Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989)

21 (reviewing court can read the adjudicator's summary of the evidence

22 and draw inferences).  De novo review shows that the ALJ's reasoning

23 

24   [3] Dr. Pollack's "marked" limitations are contradicted by

25 limitations assessed by examining psychologist Frank Rosekrans,

26 Ph.D., in February 2007.  Contradicted medical source opinions may

27 be rejected by the ALJ with specific and legitimate reasons.

28 *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

1 is supported by substantial evidence in the record.

2      The medical evidence includes an evaluation by agency
3 psychologist James Bailey, Ph.D., who reviewed Plaintiff's records
4 in March 2007 and concluded Plaintiff had no marked limitations in
5 his mental functioning categories. (Tr. 416-17.)  In support of his
6 findings, Dr. Bailey referenced a February 14, 2007, psychological
7 evaluation signed by Frank Rosekrans, Ph.D., in which psychological
8 tests similar to those relied upon by Dr. Pollack were administered
9 and interpreted.   (Tr. 414, 263-72, 558.)   Dr. Rosekrans found
10 Plaintiff tested average in intellectual functioning and did not
11 have psychological impairments sufficient to keep him from working.
12 (Tr. 268.)  Significantly, Dr. Rosekrans noted Plaintiff's reported
13 activities of daily living were "at extreme odd[s]" with the
14 psychological evaluations and his claims were "somewhat exaggerated
15 when compared to [the] exam."   (Tr. 414.)

16      It is noted also on review that, with the exception of the two
17 marked limitations rejected by the ALJ, Dr. Pollack rated remaining
18 mental and social functioning categories as having "no limitations"
19 or "mild limitations," ratings that would indicate a non-severe
20 mental impairment. (Tr. 565-66.)  The ALJ did not err in rejecting
21 the two, unexplained "marked" ratings that are inconsistent with and
22 unsupported by the rest of the evidence, including the majority of
23 Dr. Pollack's own report. *Tommasetti*, 533 F.3d at 1041 (incongruity
24 in medical source's evaluation is a specific and legitimate reason
25 for rejection of limitations).  In addition, as found by the ALJ,
26 the marked limitations are not supported by Plaintiff's VA mental
27 health progress notes regarding his psychiatric hospitalization and

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

1   treatment.  (Tr. 316-336.)

2        For example, the record shows Plaintiff was hospitalized on

3   January 10, 2007, when he presented to VA staff requesting help for

4   increasing depression and anxiety symptoms and suicidal ideation.

5   He reported he recently had ridden his horse in the country for

6   hours, "not caring if he became hypothermic." (Tr. 334-36.)  During

7   the intake interview, Plaintiff reported multiple stressors:

8   unemployment, expiration of unemployment benefits, caring for his

9   mother who was ill with cancer.  (Tr. 336.)  Progress notes indicate

10  he received medication and counseling to address his symptoms, and

11  was discharged on January 12, 2007, with a diagnosis of major

12  depressive disorder, recurrent, moderate.   (Tr. 289-90.)   The

13  treating psychiatrist's discharge report indicates Plaintiff would

14  need continued medication and counseling. (Tr. 290.) Thereafter,

15  progress notes indicated Plaintiff attended counseling, was

16  responding well to medication, reported feeling calmer and less

17  depressed, and caring for his ill mother.  He reported no complaints

18  about symptoms, was watching his diet and losing weight.  (Tr.  295,

19  395, 485, 487, 491.)   The VA records and Dr. Rosekrans'

20  comprehensive psychological evaluation (administered one month after

21  Plaintiff's discharge from the VA hospital) support the ALJ's

22  finding that Dr. Pollack's marked limitations are not supported by

23  other substantial evidence in the record.

24       The resolution of ambiguities and conflicts in the medical

25  record is the sole responsibility of the ALJ.  *Andrews*, 53 F.3d at

26  1039.  Where, as here, the record supports the ALJ's resolution of

27  ambiguity within Dr. Pollack's psychological evaluation and conflict

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

1  with mental health progress notes and opinions from other acceptable

2  medical sources with specific and legitimate reasoning, the court

3  may not substitute its judgment for that of the Commissioner.

4  **C.    Step Four Findings**

5       Citing *SSR* 83-10, (*Determining Capability To Do Other Work –*

6  *The Medical-Vocational Rules of Appendix 2*),[4]  Plaintiff appears to

7  argue that because the final RFC determination includes limitations

8  inconsistent with the Commissioner's definitions of "medium" or

9  "light" level work, the ALJ and VE should have assumed he could only

10  perform sedentary work, and was, therefore, disabled.[5]  This argument

11  is without merit.

12       As defined in *SSR* 83-10 and the Regulations, "a full range of

13  medium work requires standing or walking, off and on, for a total of

14  approximately 6 hours in an 8-hour work day.  Sitting may occur

15  intermittently during the remaining time." *SSR* 83-10 (*Glossary*).  A

16  full range of light work requires lifting no more than 20 pounds at

17  a time and frequent lifting or carrying objects up to ten pounds.

18  ───────────────

19       [4]  *Social Security Ruling* 83-10 provides guidance to the

20  adjudicator at step five, when a claimant has met his step four

21  burden to show his impairments prevent him from performing past

22  work.

23       [5]  If Plaintiff were found to be limited to sedentary work and

24  unable to perform past work, the ALJ would be obliged to proceed to

25  step five.  Using the Medical-Vocational Guidelines as a framework

26  a finding of "disabled" would be directed for an individual of

27  Plaintiff's age and education.  20 C.F.R. Pt. 404, Subpt. P, App. 2,

28  Rules 201.06 and 201.14.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

1  Light work may require "a good deal of walking or standing," which

2  is the primary difference between sedentary and most light jobs.

3  However, light work may also involve sitting most of the time, with

4  some pushing and pulling of hand or foot controls.  *Id*.  Sedentary

5  work is limited to jobs involving lifting no more than 10 pounds,

6  and is performed primarily in a seated position.  *Id*.  The fact that

7  the ALJ's RFC with additional exertional limitations does not fit

8  exactly within the *SSR* 83-10 definition of "a full range" of medium

9  or light work does not mean Plaintiff is limited to sedentary work

10  or is disabled.   Further, Plaintiff's RFC (which is reflected in

11  hypotheticals presented to the VE) significantly exceeds the

12  capacities of sedentary work.  *See SSR* 83-10 (*Glossary*).

13       The Commissioner's regulations address this type of situation

14  specifically.  Where it is determined at step four that a claimant's

15  RFC contains components of light and medium work, the ALJ may use

16  the services of a vocational expert to determine if the claimant can

17  do his past relevant work, as actually performed or as generally

18  performed in the national economy.   20 C.F.R. §§ 404.1560(b)(2)),

19  416.960(b)(2); *see also Moore v. Apfel*, 216 F.3d 864, 870-71 (9th

20  Cir. 2000); *SSR* 83-12 (at step five, vocational expert testimony

21  necessary where RFC falls between two levels).   In this case, the

22  ALJ found Plaintiff had the RFC to perform a limited range of medium

23  work with specific limitations in standing, walking and sitting, as

24  assessed by Dr. Rose in August 2008.   (Tr. 18, 21, 519-24.)   As

25  directed by the Regulations, the ALJ correctly obtained the services

26  of a vocational expert at step four to determine if these

27  limitations precluded Plaintiff's past work at the medium and light

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

1  levels.

2      Based on occupational information in the record, the VE

3  testified Plaintiff's past work in automobile sales consisted of two

4  occupations described in the DICTIONARY OF OCCUPATIONAL TITLES (DICOT):

5  automobile retail sales (classified as light work) and car lot

6  porter (classified as medium work).   (Tr. 52.)   Considering two

7  hypotheticals presented by the ALJ, the VE found the individuals

8  presented could still perform the medium level job and the light

9  level job, as they were actually performed and as generally

10 performed.   (Tr. 21-22, 54-55.)

11     The VE's testimony is consistent with DICOT information

12 regarding the demands of the Plaintiff's past work and, therefore,

13 supported by substantial evidence.   *Bray v. Commissioner of Social*

14 *Security Admin.,* 554 F.3d 1219, 1230 n.3 (9th Cir. 2009); DICOT No.

15 273.353-010, 915.687-022; *SSR* 00-4p.   Based on her expertise, the

16 VE testified a hypothetical individual who could lift 20 pounds

17 frequently and up to 50 pounds occasionally, with the capacities for

18 standing, walking and sitting listed above, could perform either of

19 Plaintiff's past jobs as a porter or sales person.   (Tr. 54-55.)

20 She indicated an individual restricted to light level work (i.e.,

21 restricted to lifting and carrying with the same work related

22 abilities) could perform the sales job.   (*Id.*)

23     Although Plaintiff may not agree with this testimony, he offers

24 no expert testimony or documentation to rebut the vocational

25 specialist testimony, which was necessary and appropriate at step

26 four to determine whether Plaintiff could meet the exertional and

27 non-exertional demands of his previous work.   20 C.F.R.   §§

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

404.1560(b)(2)), 416.960(b)(2); *see also Moore*, 216 F.3d at  at 870-71.  The ALJ did not err in relying on the VE opinions in his step four evaluation.  Because Plaintiff did not meet his burden at step four, the Commissioner was not obliged to proceed to step five or apply the Medical-Vocational Guidelines. 20 C.F.R. §§ 404.1520(a)(4) and (g), 416.920(a)(4) and (g).

<b>CONCLUSION</b>

The ALJ's findings are supported by substantial evidence and free of legal error.  Accordingly,

**IT IS ORDERED:**

1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **DENIED**;

2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 19)** is **GRANTED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant, and the file shall be **CLOSED.**

DATED April 7, 2011.

S/ CYNTHIA IMBROGNO<br>UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18